**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

R.T. ROGERS OIL COMPANY, INC.,

                Plaintiff,

v.                                            CIVIL ACTION NO.  5:16-cv-01390

ZURICH AMERICAN INSURANCE
COMPANY,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant's Motion for Summary Judgment* (Document 41) and *Memorandum of Law in Support* (Document 42), the *Defendant's Suggestion of Unopposed Motion for Summary Judgment* (Document 44), and the *Response of Plaintiff to Defendant's Motion for Ruling and Motion for Leave to File Response to Defendant's Motion for Summary Judgment Out of Time* (Document 45). The Court has also reviewed the *Defendant's Motion to Strike and Opposition to Plaintiff's Request for Leave to File an Untimely Motion* (Document 47), the *Response of Plaintiff, R.T. Rogers Oil Company, Inc., to Defendant's Motion to Strike and Reply to Zurich American Insurance Company's Opposition to Plaintiff's Request for Leave to File Untimely Motion* (Document 49), and the *Defendant's Reply in Support of Motion to Strike and Opposition to Plaintiff's Request for Leave to File an Untimely Motion* (Document 50). For the reasons stated herein, the Court finds that the motion for summary judgment should be granted.

1

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff R.T. Rogers Oil Company ("Rogers Oil") initiated this action with a *Complaint* (Document 1-1) filed in the Circuit Court of Summers County, West Virginia, on December 14, 2015. The Defendant removed the matter to this Court on February 9, 2016, citing diversity jurisdiction. The Plaintiff named Zurich American Insurance Company ("Zurich") as the sole Defendant in its complaint. The Plaintiff's claims include a declaration of rights based on an insurance policy, breach of contract, and statutory bad faith pursuant to West Virginia Code § 33-11-4(9).

The Plaintiff is a West Virginia corporation with its principal place of business in Summers County, West Virginia. Rogers Oil owns and operates various gas stations in southern West Virginia. Rogers Oil alleges that it and the Defendant were parties to a contract for an insurance policy wherein Rogers Oil was insured regarding its ownership and operation of underground storage tanks ("USTs"). Rogers Oil removed one of those USTs located on an insured property, and, upon removal, the West Virginia Department of Environmental Protection determined that a release of fuel from that UST into the ground had occurred. Rogers Oil alleges that it reported a claim to Zurich, but that Zurich refused to fully cover the environmental remediation necessary after the contaminant release. Zurich moved for summary judgment on February 28, 2017, the deadline for filing such motions. (*See* Document 34, granting the parties' joint motion for modification of scheduling order and extending the dispositive motions deadline to February 28, 2017.)

The Plaintiff filed no response to the motion for summary judgment within the fourteen-day response period. On April 4, 2017, the Defendant filed its suggestion of unopposed motion

for summary judgment and moved this Court to enter summary judgment in its favor based on the Plaintiff's failure to respond. On that same day, the Plaintiff responded to the suggestion of unopposed motion and sought leave to file a response to the Defendant's motion out of time, filing a response in opposition shortly thereafter on April 7, 2017. On April 13, 2017, Zurich filed a motion to strike the Plaintiff's out-of-time response to its motion for summary judgment, asserting that the Court should not consider the response due its untimeliness and the Plaintiff's lack of excusable neglect. Because the Plaintiff's response to the motion for summary judgment was filed well beyond the deadline to respond,[1] the facts that follow are based exclusively on the Defendant's motion and attached exhibits. The facts are, however, described in the light most favorable to the Plaintiff as the non-moving party.

The Plaintiff obtained an insurance policy issued by the Defendant entitled "Storage Tank System Third Party Liability and Cleanup Policy." (Def.'s Mot. for Sum. Judg., Exhibit A.) (hereinafter, "Policy") The Policy was a "claims made and reported policy" wherein "claim(s) must first be made by or against the 'insured' during the 'policy period' and 'claim(s)' must be reported to [Zurich] during the 'policy period,' the automatic extended reporting period or the extended reporting period, if applicable." (*Id.* at 1.) According to the Policy, Zurich agreed to pay, "on behalf of the 'insured' any 'cleanup costs' required by 'governmental authority' as a result of a 'release(s)' that 'emanates from' a 'scheduled storage tank system(s)' at a 'scheduled location' that commences on or after the 'retroactive date' and is first discovered by the 'insured' during the 'policy period . . . .'" (*Id.*) The Policy defines scheduled locations as "the property(ies) designated in the Declarations or by endorsement onto this policy," and further defines scheduled

---

1 The Court will more fully discuss the Defendant's suggestion of unopposed motion for summary judgment and the Plaintiff's response thereto *supra*.

3

storage tank system as "a tank(s) owned or operated by [the insured], including any connecting piping, ancillary equipment and containment system that is on, within, or under a 'scheduled location,' identified in the Declarations or applicable Endorsement and described in the Application." (*Id.* at 3.) The Policy includes a policy period of April 1, 2003 to April 1, 2004, with a retroactive date of February 19, 1994, and further provides that the insured "*shall provide notice to [Zurich]* of your intention to perform a voluntary 'scheduled storage tank system' removal or replacement." (*Id.* at 8 (emphasis added).) Additionally, the Policy contains certain exclusions. The Policy specifically "does not apply to 'claims,' 'cleanup costs' or 'loss(es) based upon or arising out of: A. any 'release' known to an 'insured' prior to the effective date of the 'policy period.'" (*Id.* at 3.)

Attached to the Policy is a Site Schedule listing different sites owned by the Plaintiff and covered by the Policy. That Site Schedule lists "Courthouse Service" as covered location number two with four underground storage tanks. (*Id.* at 11.) The Courthouse Service Station site is the site at issue. (Pl.'s Complaint at ¶ 5.) This site has been used as a gasoline station since the 1920s and has had several different underground storage tanks used on the property since that time. (Def.'s Mot. for Sum. Judg., Exhibit E.) According to the Plaintiff's expert witness, previous USTs were likely the cause of releases of chemicals into the ground investigated by the West Virginia Department of Environmental Protection ("WVDEP") in 1996, well before this case. (Def.'s Mot. for Sum. Judg., Exhibit E; M. Alamong Depo. at 25:10-26:20, 32:2-17 (Document 41-7); J. Newbill Depo. at 12:1-9 (Document 41-8).)

On June 18, 2003, the Plaintiff hired third-party contractor Petrocon to remove the USTs from the Courthouse Service Station site, including the associated piping and other equipment

4

attached to the tanks. (Pl.'s Complaint at ¶ 5; R. Rogers Depo. at 15:7-21 (Document 41-2).) Upon removing the tanks, Petrocon also conducted a soil sample from the removal site, as per WVDEP requirements. (T. Bess Depo. at 18:24-19:6.) Based on the test results from the soil sample, on July 21, 2003, WVDEP informed the Plaintiff that a petroleum release had occurred and soil and ground water remediation would be necessary. (Def.'s Mot. for Sum. Judg., Exhibit L.) The Plaintiff hired consultants Simon & Associates and began investigation and remediation on the site. (Def.'s Mot. for Sum. Judg., Exhibits C and D.)

On June 24, 2003, six days after the tanks were removed from the site, the Plaintiff notified Zurich of the removal of the USTs by submitting to Zurich a 48-Hour CST Tank Pull Notification form. (Pl.'s Complaint at ¶ 5.) Greg Rogers, the owner of R.T. Rogers Oil, testified during his deposition that, at the time the USTs were removed, he did not believe he needed to give Zurich notice that the tanks were being removed. (R. Rogers Depo. at 21:13-21.) After removal of the USTs and before the results of the soil sample tests were obtained, the Plaintiff disposed of the tanks at the Mercer County Landfill. (T. Bess Depo. at 20:10-20.)

On July 18, 2003, Zurich sent the Plaintiff a correspondence acknowledging its receipt of the filing of a potential claim surrounding the removal of the USTs. Zurich also informed the Plaintiff in this correspondence that it retained its own environmental consultant to conduct an investigation surrounding the issue, and that "[n]othing in this letter, and no actions undertaken by Zurich to monitor or investigate this incident, should be construed as an admission of coverage or as a waiver of any defenses available to Zurich." (Def.'s Mot. for Sum. Judg., Exhibit O.) On October 10, 2003, the Plaintiff, through its counsel, made an official demand for coverage under the Policy. The Plaintiff demanded coverage of the full amount of cleanup costs incurred.

5

(Def.'s Mot. for Sum. Judg., Exhibit P.) In response to this demand, and after completing its own investigation, Zurich informed the Plaintiff by correspondence on May 28, 2004, that it would cover forty-two percent (42%) of the Plaintiff's necessary and reasonable cleanup costs incurred on the site in question. (Def.'s Mot. for Sum. Judg., Exhibit N.) Zurich noted that the Plaintiff's consultant's report itself indicated evidence of historical petroleum leaks on the property that occurred before the Policy's retroactive date, and that the Plaintiff failed to give Zurich the opportunity to assess the removed tanks and attached equipment after filing the claim. Zurich therefore found that the investigation did not prove that the leaks came exclusively from the Plaintiff during the policy period. (*Id.*)

On September 20, 2004, the Plaintiff corresponded with Zurich for a second time, again requesting that Zurich pay the full amount for the cleanup costs. On November 2, 2004, Zurich informed the Plaintiffs that its "proposed allocation [of forty-two percent of the cleanup costs] is fair and reasonable and in accordance with the terms and conditions of the policy in light of the historical and current information presented." (Def.'s Mot. for Sum. Judg., Exhibit Q.) Zurich also stated that it was still willing to pay forty-two percent of the Plaintiff's cleanup costs related to the UST removal. (*Id.*) On September 13, 2005, the Plaintiff submitted a third correspondence, again requesting Zurich to provide coverage for one hundred percent of the cleanup costs surrounding the UST removal. (*Id.*) On January 30, 2006, Zurich responded a third time, stating that its original May 28, 2004 offer of forty-two percent coverage was fair and reasonable under the policy and was still being extended to the Plaintiffs. (*Id.*) On December 14, 2015, more than twelve years after originally demanding coverage, the Plaintiff filed its complaint in the Circuit Court of Summers County, West Virginia, seeking a declaration that the Defendant breached the

6

insurance contract and committed statutory bad faith. (Pl.'s Comp. at ¶ 17.) From Zurich's January 30, 2006 correspondence with the Plaintiff until the filing of the complaint, Zurich received no further communication from the Plaintiff. The Plaintiff has not accepted Zurich's offer to pay for forty-two percent of the Plaintiff's cleanup costs, and remediation of the site was still ongoing at the time the Plaintiff filed its complaint.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving

7

party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

**DISCUSSION**

Zurich asserts that it is entitled to summary judgment concerning the Plaintiff's breach of contract claim because no breach of contract has occurred, and the Plaintiff has failed to put forth any evidence that shows a genuine issue of material fact regarding the alleged breach. Further, even if an issue of material fact surrounding the alleged breach does exist, Zurich argues that the applicable statute of limitations for asserting a breach of contract claim has expired and summary

judgment in its favor is thus still appropriate. With respect to the Plaintiff's claims for statutory bad faith, Zurich again argues that the applicable statute of limitations for any statutory bad faith claim has lapsed. In addition, Zurich asserts that it is entitled to summary judgment on the Plaintiff's declaratory judgment claim because this claim is precluded by the doctrine of laches. Finally, Zurich asserts that the Plaintiff's failure to preserve the USTs, after removal for Zurich's examination, warrant spoliation sanctions in the form of granting its motion for summary judgment.[2]

### A. *Suggestion of Unopposed Motion for Summary Judgment and Plaintiff's Response*

As noted above, the Plaintiff did not respond to the Defendant's motion for summary judgment in a timely manner. Well after the deadline for a response, the Defendant filed a suggestion of an unopposed motion for summary judgment wherein it moved this Court to enter summary judgment in its favor based on the Plaintiff's failure to dispute its factual assertions. The Plaintiff then responded to this motion by asserting that it missed the deadline for a response due to excusable neglect, and moved the Court to grant it leave to file a response to the summary judgment motion out of time. Specifically, the Plaintiff argues that there was a power outage in counsel's office on the days immediately following the filing of the Defendant's motion for summary judgment, and that Plaintiff's counsel was then out of town. Plaintiff further asserts that, due to a "clerical oversight," the fourteen-day response period in the scheduling order and the local rules was "overlooked and not scheduled on the calendar of counsel." (Pl.'s Motion for Leave to File, ¶ 4 (Document 45).) The Defendant counters that the Plaintiff's stated reasons for failing to respond to the summary judgment motion do not constitute excusable neglect, and thus,

---

2 The Court notes that the Plaintiff's complaint does not divide its causes of action into separate counts, but simply lists its relevant causes of action with its demands at the end of the complaint.

the Plaintiff's motion for leave to file should be denied and the Plaintiff's proposed response should be stricken.

Zurich's motion for summary judgment was filed on February 28, 2017, the deadline for filing such motions under the Court's *First Amended Scheduling Order* (Document 34). That same order further stated that "[a]ny responses shall be served within fourteen (14) days from the date of service of the motion . . . **(PLEASE NOTE THAT ANY RESPONSE OR OTHER DOCUMENTS FILED AFTER THE DEADLINE FOR FILING, WITHOUT LEAVE OF COURT, WILL <u>NOT</u> BE CONSIDERED.)**"   (Document 34, ¶ 2) (emphasis in original.) Pursuant to Rule 6(b) of the Federal Rules of Civil Procedure, the Court may extend leave to file after a deadline "on motion made after the time has expired if the party failed to act because of excusable neglect."  F.R.Civ. P. 6(b)(1)(B).  According to the United States Supreme Court, a court should consider "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith" when determining whether neglect is excusable. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, (1993).  The Fourth Circuit applied the same standard for excusable neglect in *Agnew v. United Leasing Corporation* and determined that it was appropriate to deny leave to file past a deadline when counsel did so for "mistakenly calendar[ing] the wrong date." *Agnew v. United Leasing Corp.*, No. 15-2554, 2017 WL 699105, at *5 (4th Cir. Feb. 22, 2017). The Fourth Circuit held that "'run-of-the-mill inattentiveness by counsel' is not excusable neglect," and thus it was not an abuse of discretion to deny a motion for leave to file an untimely brief. *Id.*

As in *Agnew*, the Plaintiff's explanation amounts to the same run-of-the-mill inattentiveness that does not constitute excusable neglect. The Plaintiff states that its counsel's office was without power until March 2, 2017. This still left the Plaintiff twelve (12) additional days to either file a brief in response to the motion to dismiss or request an extension. The Plaintiff did neither, however, and continued doing nothing until April 7, 2017, after the Defendant filed its suggestion. An admitted "clerical error," as described by the Plaintiff, on the part of counsel amounts to mere inattentiveness, and the Court therefore finds that the Defendant's motion to strike the Plaintiff's response to the summary judgment motion should be granted. The Court denies the Plaintiff's motion for leave to file a response out of time and finds it appropriate to consider the motion for summary judgment without any response by the Plaintiff.

However, the Court finds that the Plaintiff's failure to respond does not require entry of summary judgment absent thorough review and consideration of Zurich's motion and supporting evidence. Federal Rule of Civil Procedure 56(e) provides that, if a party fails to address a factual assertion, the court may "grant summary judgment if the motion and supporting materials- including the facts considered undisputed show that the movant is entitled to it." Zurich, as the moving party, bears the initial burden of demonstrating that no genuine issue of material fact exists such that judgment as a matter of law in its favor is appropriate. Even absent a response from the Plaintiff, the Court must determine whether Zurich has met that burden as to each claim.

*B. Breach of Contract and Statute of Limitations*

Zurich contends that New York law governs the contract, and that New York's statute of limitations on contract claims is six (6) years. Because it informed the Plaintiff on May 28, 2004, that it would provide coverage at forty-two percent of the cleanup costs, and because the Plaintiff

did not file suit alleging breach of contract until December 14, 2015, Zurich argues that New York's six-year statute of limitations had lapsed well before the complaint was filed. Zurich further argues that, even if West Virginia law applies, its ten-year statute of limitations on the breach of contract action has lapsed.

The Court finds that the Plaintiff's breach of contract action is precluded by the statute of limitations. Based on the undisputed language of the insurance contract stating that "the 'insured' and we agree that the law of the State of New York shall apply without giving effect to any conflicts or choice of law principles" concerning any disagreement or dispute as to the meaning of contractual terms, the Court finds that New York law governs the contract interpretation. (Def.'s Mot. for Sum. Judg., Exhibit A, at 8.) Pursuant to New York law, "[t]he following actions must be commenced within six years: . . . 2. an action upon a contractual obligation or liability, expressed or implied . . . ." N.Y. C.P.L.R. 213(2). Here, the Plaintiff made a demand for coverage under the Policy on October 10, 2003, and on May 28, 2004, Zurich responded with its offer of a forty-two percent allocation of coverage of the Plaintiff's cleanup costs. Rather than accept Zurich's offer or challenge it, the Plaintiff merely continued to send Zurich receipts of remediation costs. The evidence and deposition testimony presented show that the Plaintiff knew as of May 28, 2004, that Zurich only intended to cover forty-two percent of the UST cleanup costs under the Policy. Therefore, the statute of limitations to challenge Zurich's alleged breach of contract began to run on May 28, 2004. Under New York law, the statute of limitations expired on May 28, 2010. Because the Plaintiff did not file its complaint until December 14, 2015, the breach of contract claim is time barred and summary judgment in the Defendant's favor is appropriate.

The Court further finds that, even if West Virginia law governed the contract, the Plaintiff's breach of contract claim would still be barred by the applicable statute of limitations. According to West Virginia law,

> [e]very action to recover money, which is founded upon . . . any contract other than a judgment or recognizance, shall be brought within the following number of years next after the right to bring the same shall have accrued . . . if it be upon any other contract in writing under seal, within ten years; if it be upon . . . a contract in writing, signed by the party to be charged thereby . . . but not under seal, within ten years .
> . . .

W.Va. Code § 55-2-6. The West Virginia Supreme Court has held that, concerning breach of contract actions, "the statute of limitations begins to run when the breach of contract occurs or when the act breaching the contract becomes known." *McKenzie v. Cherry River Coal & Coke Co.*, 466 S.E.2d 810, 817 (W.Va. 1995); see also, *Heydarian v. JPMorgan Chase Bank, N.A.*, No. CIV.A. 3:14-20013, 2015 WL 2183131, at *2 (S.D.W. Va. May 8, 2015) (Chambers, C.J.) ("In a contract action, the question is when the plaintiff knew, or reasonably should have recognized, that the contract was breached.").

The Court finds that there is no dispute as to when the Plaintiff knew of Zurich's alleged breach of the insurance contract. The Plaintiff filed a claim with Zurich in July 2003, and on October 10, 2003, Plaintiff's counsel sent Zurich an official demand letter demanding one hundred percent coverage of cleanup costs under the Policy. The Plaintiff received Zurich's response on May 28, 2004, wherein Zurich "offer[ed] to provide coverage for an allocated portion of the eligible costs associated with this claim . . . ." (Def.'s Mot. for Sum. Judg., Exhibit N.) Therefore, upon receipt of this correspondence, the Plaintiff knew, or reasonably should have recognized, that Zurich was allegedly in breach of the insurance contract. Rather than accept the amount offered by Zurich or notify Zurich that the Plaintiff felt its offer was in breach of the

13

contract, on September 20, 2004, the Plaintiff sent Zurich more invoices and demanded one hundred percent coverage of cleanup costs under the policy. (Def.'s Mot. for Sum. Judg., Exhibit Q ("We respectfully request that you provide full coverage for the claim.")) In response to this letter, Zurich again notified the Plaintiff on November 2, 2004, that its offer was still to cover forty-two percent of the cleanup costs and that its position was that this proposed offer was "fair and reasonable and in accordance with the terms and conditions of the policy in light of the historical and current information presented." (*Id.*)

Based on this evidence, the Court finds that no reasonable person could find that the Plaintiff was unaware, as of November 2004, that Zurich had denied any coverage above forty-two percent of the costs under the policy. That denial of coverage constitutes the alleged breach of the contract, and therefore, there exists no genuine dispute regarding the date of the alleged breach. However, the Plaintiff still failed to file its lawsuit in a West Virginia state court until December 14, 2015, more than ten years after it knew, or reasonably should have known, that Zurich did not intend to meet its demand of full coverage under the policy.[3] So, even if West Virginia law governs the contract, the statute of limitations bars the Plaintiff's breach of contract action. Because the Court finds that the Plaintiff's breach of contract claim is time barred, the Court need not address Zurich's argument that no breach of the insurance contract actually occurred.

---

3 The Plaintiff could prevail on the statute of limitations issue only if the Court were to disregard the contractually agreed-to application of New York law and found that the statute of limitations began to run only after the third exchange of correspondences between the Plaintiff and the Defendant. However, because none of the Plaintiff's continued correspondences after Zurich's initial denial of full coverage were made pursuant to a formal appeals process, the Court refuses to find that each communication by the Plaintiff consisting merely of additional invoices should restart the statute of limitations clock.

*C. Statutory Bad Faith*

Zurich next argues that it is entitled to summary judgment on the Plaintiff's statutory bad faith claims. Zurich contends that this claim is also time barred pursuant to the one-year statute of limitations in West Virginia Code § 55-2-12(c). Zurich argues that the one-year statute of limitations started to run on the date the correspondence denying full coverage was sent to Plaintiff's counsel in 2004. Thus, its position is that Plaintiff's statutory bad faith claim, filed in December 2015, is time barred.

The West Virginia Unfair Trade Practices Act ("WVUTPA") prohibits insurers from engaging in unfair settlement practices with insured parties. W.Va. Code § 33-11-4(9). The West Virginia Supreme Court has held that "[c]laims involving unfair settlement practices that arise under the Unfair Trade Practices Act . . . are governed by the one-year statute of limitations set forth in West Virginia Code § 55-2-12(c)." Syl. Pt. 1, *Wilt v. State Auto. Mut. Ins. Co.*, 506 S.E.2d 608, 608 (W.Va. 1998). Concerning when the statute of limitations begins to run in WVUTPA cases, the West Virginia Supreme Court has also held that first-party statutory bad faith claims begin to run "when the insured knows or reasonably should have known that the insurer refused to defend him or her in an action." Syl. Pt. 5, *Noland v. Virginia Ins. Reciprocal*, 686 S.E.2d 23, 25 (W.Va. 2009); *see also*, *Cava v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 753 S.E.2d 1, 7 (W.Va. 2013) (holding that the lower court did not abuse its discretion in applying the one-year statute of limitations in West Virginia Code § 55-2-12(c) to a statutory bad faith third-party complaint that was not derivative of the Plaintiff's original claim.).

As stated above, Zurich informed the Plaintiff on May 28, 2004, and November 2, 2004, that it would not agree to provide full coverage under the Policy. The Plaintiff therefore

undoubtedly knew by November 2004 that Zurich would not offer full coverage. Thus, the Court finds that the Plaintiff's WVUTPA bad faith claim is time-barred by the one-year statute of limitations, and summary judgment on Zurich's behalf is appropriate.

   D. *Declaratory Judgment and Spoliation Sanctions*

Zurich lastly asserts that it is entitled to summary judgment regarding the Plaintiff's request for a declaratory judgment that Zurich breached the insurance contract, and further argues that it should be awarded summary judgment in the form of spoliation sanctions because the Plaintiff failed to preserve evidence for Zurich to consider. However, because these arguments stem from the Plaintiff's breach of contract and WVUTPA bad faith claims, and because the Court has found that summary judgment on those claims is appropriate, the Court need not address these remaining arguments.

## CONCLUSION

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Suggestion of Unopposed Motion for Summary Judgment* (Document 44) be **DENIED** and that the *Defendant's Motion for Summary Judgment* (Document 41) be **GRANTED**. The Court further **ORDERS** that the *Motion for Leave to File Response to Defendant's Motion for Summary Judgment Out of Time* (Document 45) be **DENIED** and the *Defendant's Motion to Strike and Opposition to Plaintiff's Request for Leave to File an Untimely Motion* (Document 47) be **GRANTED**.

Lastly, the Court **ORDERS** that any pending motions be **TERMINATED AS MOOT** and that this matter be **DISMISSED** and **STRICKEN** from the docket.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER: July 7, 2017

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA